Marselis *v.* Seaman.

Judgment affirmed.

[SARATOGA GENERAL TERM, January 1, 1856. *C. L. Allen, Bockes* and *James,* Justices.]

---

## MARSELIS *vs.* SEAMAN.

An indorsement upon a summons issued in an action brought against a toll-gatherer upon a plank road, to recover a penalty for demanding and receiving more toll than by law he was authorized to collect, which states that the process is "issued according to the provisions of the statute concerning the incorporation of turnpike and plank road companies, and the collection of penalties for demanding and recovering more than lawful toll, in passing through toll gates on such roads," is a sufficient compliance with the requirements of the statute.

In the absence of a toll-gatherer, his wife will be deemed to be his agent, for the purpose of demanding and receiving toll, and as such she is authorized to determine the rate or amount of toll to be paid by travelers.

In demanding and receiving toll she is acting within the scope of her employ-
ment, and her acts will bind her husband. If she demands and receives too
much, her husband is liable for the penalty imposed by statute.

The section of the statute giving a penalty of $5 against toll-gatherers on *turn-
pikes,* for demanding and receiving more toll than is legally collectable, ap-
plies also to toll-gatherers on *plank roads.*

A covered sleigh, capable of carrying six passengers inside, having seats for pas-
sengers, and used daily for carrying passengers, over the same route, on a
plank road, and drawn by two animals, is to be deemed a "vehicle used chief-
ly for carrying passengers," within the meaning of the act in relation to plank
roads, passed April 15, 1853; and is liable to the payment of a toll of three
cents per mile, notwithstanding the fact that the mail is also carried in the
same vehicle.

THIS action was brought before a justice of the peace, to re-
cover of the defendant, a toll-gatherer on a plank road, the
penalty imposed by statute for demanding and receiving more
toll than by law he was authorized to collect. The summons
issued by the justice had this indorsement thereon : "Issued
according to the provisions of the statute concerning the in-
corporation of turnpike and plank road companies, and the
collection of penalties for demanding and recovering more than
lawful toll, in passing through toll gates on such roads." The
cause was tried, and a verdict of a jury being rendered for the
plaintiff for $5, the justice entered judgment in his favor for
that sum, with costs. The defendant appealed to the Fulton
county court, where the judgment was affirmed. Thereupon
an appeal was taken to this court.

*C. B. Cochrane,* for the appellant.

*Wm. Wait,* for the respondent.

*By the Court,* BOCKES, J, The objection to the process, that
it was not properly indorsed, and hence was void, was correctly
overruled by the justice. The indorsement was a full compli-
ance with the requirements of the statute. It gave a general
reference to the statute which imposed the penalty sought to be
recovered. In *Avery* v. *Slack,* (17 *Wend.* 85,) Mr. Justice

Marselis *v.* Seaman.

Cowen remarked, that the object of the statute was to give the defendant notice by indorsement, of the offence for which he is prosecuted. In this case that purpose was fully answered.

Nor can the objection that his wife demanded and received the fees exculpate the defendant, if the case was made out against him in other respects. His defense must stand on other ground. The defendant was authorized to take toll, and in his absence, his wife must be deemed to be his agent. In *Hopkins* v. *Mollinieux,* (4 *Wend.* 465,) the rule is laid down that a wife may act as the agent of her husband ; and if he permits her so to act in any particular transaction he adopts her act and is bound thereby. In this case the wife was authorized to demand and receive toll, and, as the defendant's agent, was to determine the rate or amount of toll to be paid by those passing the gate. When she demanded and received toll she was acting within the scope of the employment, and hence her acts must bind her principal. It was held in *Hasbrouck* v. *Weaver,* (10 *John. R.* 247,) that the husband was answerable for a forfeiture incurred by the wife, under a penal statute. (*See also Riley* v. *Suydam,* 4 *Barb.* 222, *and cases there cited.*)

The next question to be considered is whether the section of the statute giving the penalty against toll-gatherers on *turnpikes,* applies to toll-gatherers on plank roads. By section 47 of the general plank road act, (*Session Laws of* 1847, *chap.* 210, § 47, *amended by chap.* 287,) it is provided that section 50, (with other sections,) "of the first title of the eighteenth chapter of the first part of the revised statutes shall apply to the companies organized by virtue of this act, and all inspectors and other officers named therein, and to all the officers and roads of such companies, so far as the same can be so applied, and are consistent with this act." Section 50 thus made applicable " to all the officers and roads " of plank road companies, provides that " Every toll-gatherer who at any turnpike gate shall unreasonably hinder or delay any traveler or passenger liable to the payment of toll, or shall demand and receive from any person more toll than by law he is authorized to collect, shall for each offense forfeit the sum of five dollars

to the person aggrieved." It was held in *Cotheal·v. Bronson*, (1 *Selden*, 562,) that a penal law should not be construed so strictly as to defeat the obvious intention of the legislature. It must be admitted that it was the clear intent of the legislature, in making this section applicable to plank roads and their officers, to punish toll-gatherers for extortion; yet· such intent would be frustrated by limiting its application to toll-gatherers at *turnpike gates.* Indeed such limitation would render nugatory the statute which makes section 50 applicable to plank roads, so far as it regards that section. The making of section 50 applicable to *plank roads*, was sufficient, in my judgment, to authorize an action under it against .toll-gatherers on plank roads for extortion, without declaring it also, as the statute does, applicable to "all the officers" thereof. But a toll-gatherer is an officer of the company, to a certain extent. He is appointed by the president and directors in obedience to the law (§ 34,) and is invested by law with certain powers, (§ 35,) and he is called an officer in section 51, which provides for the collection of penalties incurred by toll-gatherers.

The action in *Skinner* v. *Anderson*, (12.*Barb.* 648,) was grounded on section 50, and was in every material point the same as this. No question was then raised, so far as appears from the case as reported, in regard to the applicability of that section to toll-gatherers on plank roads. . But it is a matter of surprise that neither the distinguished counsel who argued that case, nor the learned court which decided it, should have discovered a point in it, fatal to the plaintiff's recovery, if indeed such point existed. It seems to have been taken for granted that this section was applicable to toll-gatherers on plank roads, and in my judgment the court was correct in the assumption.

It now remains to be seen whether the defendant demanded and received more toll than by law he was authorized to collect, The case shows that the plaintiff was the proprietor of a stage route and carried the mail, over the line, or part of the line, of the plank road on which the defendant was a toll-gatherer. At the time of the alleged extortion the plaintiff passed over the road from gate No. 2 to gate No. 3, where the defendant was

stationed, with a covered sleigh containing passengers and drawn by two horses. The distance from gate No. 2 to gate No. 3, was a trifle over four miles and three-fourths. The defendant's wife demanded and received from the plaintiff one shilling as toll. By law the company were entitled to demand as toll, "for every vehicle drawn by one animal, one cent per mile, and one cent per mile for each additional animal; for every vehicle used chiefly for carrying passengers, drawn by two animals, three cents per mile, and one cent per mile for each additional animal." (*Sess. Laws* 1853, *page* 535, *chap.* 245.) The question litigated on the trial before the justice was whether the plaintiff was bound to pay as toll *two* or *three* cents per mile for the distance between gate No. 2 and gate No. 3. If only two cents, the plaintiff was entitled to recover; if three cents, too much toll was not demanded or taken. This question depended on the fact whether the vehicle fell within the description of those specified in the statute as follows : "*for every vehicle used chiefly for carrying passengers, drawn by two animals.*" The proof shows that it was drawn by two animals. Was the vehicle "used chiefly for carrying passengers?" It is described as a covered sleigh; was called a stage; would carry six passengers inside comfortably; had seats for passengers.; and, as the witness testified who had the vehicle (or the one similar to it) built, it was constructed for carrying passengers, with a place under the driver's seat to carry the mail, and it was used daily for carrying passengers. Unless there is some evidence to explain, modify or contradict this proof, it would be an intolerable perversion of the force and effect to be given to testimony, to say either that the vehicle was not then in fact "used chiefly for carrying passengers," or that it was not such as are usually used for that purpose.

All the evidence there is to countervail the conclusion to which that proof should lead a court and jury is this : that the plaintiff carried the mail in the vehicle, which mail ordinarily consisted of one bag, and could be carried conveniently in front. This in no way weakens or changes the effect fairly to be given to the other evidence. If it were possible to say on this proof,

that the vehicle was used chiefly to carry the mail, it would be preposterous and transcendently absurd to say, on all the proof, that it was not used chiefly for carrying passengers.  There is no conflict of proof in the case.  The facts are plain, and admit of but one fair conclusion ; and it only remains now for the court to pronounce the judgment which the justice should have rendered, when the defendant insisted that there was no evidence that the defendant, or his wife, demanded or received more toll than he was allowed by law to collect.  The verdict of the jury is irreconcilable to conscience, and must have been rendered under mistake, improper influence, or through fraud.

The judgment of the county court and of the justice must be reversed.

Judgments reversed.

[SARATOGA GENERAL TERM, January 1, 1856.  *C. L. Allen*, *Bockes* and *James*, Justices.]